UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80157-Cr-MARRA/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ULI OGIERMANN and
ROBERT VAN DE WEG,

    Defendants.
_____/

**DEFENDANTS' MOTION TO PRECLUDE OTHER ACT EVIDENCE**

June 6, 2011

BACKGROUND

### A.     The Charged Offense

On October 28, 2010, Ulrich Ogiermann and Robert Van de Weg were charged in a one-count Indictment with conspiracy to restrain trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Indictment alleges that, from October 2001 until February 2006, Mr. Ogiermann conspired with "various corporations and individuals" to "suppress and eliminate competition on *components* of cargo rates by fixing and coordinating certain surcharges, including security and fuel surcharges."  Indictment ¶ 4, 7 (emphasis added).  Mr. Van de Weg is alleged to have joined the charged conspiracy in December 2003.  *Id.*  In response to a request for a bill of particulars, the government indicated that the "certain surcharges" were limited to "the security surcharge, the fuel surcharge, and the war risk surcharge."  (Exhibit A.)  As described in the Indictment, the total cargo rate charged to customers is comprised of a base rate plus any applicable surcharges.  Indictment ¶ 6.  The Indictment does not allege a conspiracy with respect to the total cargo rates charged to customers.

### B.     The Government's Notice Concerning Other Act Evidence

The government has provided notice of its intent to offer evidence concerning certain uncharged conduct, including the defendants' alleged participation in conspiracies (1) to increase base rates, (2) to refuse paying commissions to freight forwarders on surcharges, and (3) to make payments to foreign officials in violation of the Foreign Corrupt Practices Act ("FCPA").  (Exhibit A at 1-2.)  The government has not committed itself to a theory of admissibility for this evidence.  With respect to base rates and payments to foreign officials, it suggests only that "[t]his evidence may be considered intrinsic to the charged conduct, inextricably intertwined therewith, or offered pursuant to F.R.E. 404(b)."  *Id.* at 2.  With respect to refusal to pay commissions on surcharges, it offers no theory of admissibility, but simply asserts that the

defendants "conspired to keep the forwarders from earning a commission on the amount of surcharges." *Id.* at 1.

Messrs. Ogiermann and Van de Weg vigorously deny participating in these uncharged crimes. For the reasons set forth below, evidence on these subjects should not be admitted at trial.

## ARGUMENT

I. EVIDENCE CONCERNING BASE RATES AND FREIGHT FORWARDER COMMISSIONS ARE NOT INTRINSIC TO THE CHARGED CONDUCT

### A. The Intrinsic Evidence Doctrine

Other act evidence is intrinsic to the charge only if it: (1) arises out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with evidence regarding the charged offense. *United States v. Wright,* 392 F.3d 1269, 1276 (11th Cir. 2004).[1] Because labeling evidence as "intrinsic" to the charged offense exempts it from the rigorous analysis required by Rule 404(b), the doctrine should be applied narrowly. *See United States v. Green*, 617 F.3d 233, 245-250 (3d Cir. 2010) (noting dangers of non-analytical decision making encouraged by broadly applying intrinsic evidence doctrine). The "other crimes" evidence at issue in this motion fails to satisfy any of the criteria for admissible intrinsic evidence.

### B. Base Rates and Freight Forwarder Commissions

Large freight forwarders are Cargolux's primary customers. A freight forwarder provides transportation solutions for shippers by, for example, arranging transportation from the loading dock of a company's manufacturing facility to its retail locations, including any air transportation

---

[1] Although the government identifies "inextricably intertwined" as a separate theory of admissibility, "inextricably intertwined" is simply a means of defining evidence that is "intrinsic" to the charge. *Wright*, 392 F.3d at 1276.

2

component, which it obtains from Cargolux or other carriers. The total price for air cargo services charged by an air freight carrier is comprised of multiple components, including the base rate and applicable surcharges. Base rates charged by a given carrier vary depending on many factors, including the route, the season, the weight of the cargo, the type of cargo and whether there is a long term contract with the customer. At all times relevant to the Indictment (and before and after), Cargolux paid a commission to freight forwarders calculated as a percentage of the base rate, but not on any surcharges. Surcharges have always been seen as efforts to recoup costs and, therefore, have been treated as non-commissionable.

That any agreement on base rates or freight forwarder commissions is distinct from the agreement on surcharges alleged in this case is made clear by the government's own charging decisions. In *United States v. Boudier*, No. 11-CR-0308 (N.D. Ill. April 26, 2011), an indictment returned approximately four months after the Indictment in this case, it is alleged that two Air France employees participated in a conspiracy to fix surcharges, including the fuel surcharge. (Exhibit B). However, that indictment also charges two additional and separate objects: (1) "agreeing not to pay their customers (*i.e.*, freight forwarders) commissions on surcharges" and (2) "fixing and coordinating rates for air cargo services." *Id.* at 1-2. The government's decision not to charge these objects in this case was obviously an intentional one. The Air France indictment arises from the same Antitrust Division investigation. For whatever reason (presumably a lack of proof), the government chose not to include freight forwarder commissions or base rates as objects of the conspiracy in this case. It should not be permitted to offer evidence of these "other crimes" through the back door, and without a Rule 404(b) analysis, simply by labeling it "intrinsic".[2]

---

[2] The Indictment in this case includes a "Manner and Means" section that alleges that the defendants agreed with coconspirators not to pay commission on surcharges. Indictment ¶ 9.

3

The discovery provided to date confirms that evidence relating to the freight forwarder commissions and base rates is distinct and separable from evidence relating to surcharges. The issues implicate different business decisions, different documents, different events, and, often, different participants. Uncharged acts are intrinsic only when "the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other." *United States v. Beechum*, 582 F.2d 898, 912 n.15 (5th Cir. 1978). Judged by that standard, the commission and base rates evidence is plainly not intrinsic. It is not *necessary* for the jury to understand that evidence to reach a just verdict on the charged offense. *See, e.g., United States v. Chilcote*, 724 F.2d 1498, 1501 (11th Cir. 1984) (evidence of unlicensed flights to Colombia was not "inextricably intertwined" with the charged drug trafficking offense, where testimony about the charged offense was comprehensible without references to the Colombian flights).[3]

II.  EVIDENCE CONCERNING BASE RATES, COMMISSIONS AND PAYMENTS TO FOREIGN OFFICIALS IS NOT ADMISSIBLE UNDER RULE 404(B)

Evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Although such evidence may be used for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," *id.*, it must first satisfy each element of a three-part test. First, the other crimes evidence must be relevant to an issue

---

A description of the means by which a defendant allegedly committed the charged crime cannot expand the charge, and, therefore, does not control the issue of whether evidence is intrinsic to the charge.

[3] *See also United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether.").

4

other than a defendant's character *(i.e.*, a non-propensity purpose). *United States v. Lamons*, 532 F.3d 1251, 1265-66 (11th Cir. 2008). Thus, if other crimes evidence is offered on the subject of intent, the government must demonstrate that the defendant had the same state of mind in committing the uncharged act as he did while committing the charged offense. *Beechum*, 582 F.2d at 913. Second, there must be sufficient proof that the defendant committed the extrinsic act. *Lamons,* 532 F.3d at 1265-66. In other words, before admitting other crimes evidence, the Court must determine that a jury could reasonably conclude that the defendant committed the uncharged offense. *Beechum*, 582 F.2d at 913. Third, the probative value of the evidence must not be substantially outweighed by the potential for undue prejudice, confusion of the issues, undue delay or waste of time. *Id.*; Fed. R. Evid. 403. Where the admission of extrinsic evidence under Rule 404(b) would open the door to a trial within a trial and distract the jury from its primary task of evaluating the evidence relating to the charged offense, exclusion is appropriate.[4] For the reasons set forth below, the proposed other crime evidence identified by the government should be excluded under these standards.

### A. Evidence Concerning Payments to Foreign Officials

Evidence concerning purported corrupt payments to foreign officials fails to satisfy any element of the Rule 404(b) test. To be relevant under Rule 404(b), an extrinsic act must be similar to the charged offense. *See United States v. Eirin*, 778 F.2d 722, 731 (11th Cir. 1985) ("relevancy of extrinsic offense evidence is measured by the similarity of the extrinsic offense to

---

[4] *See, e.g., United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) (courts should exclude topics that "open the door to evidence on collateral issues that would likely confuse the jury"); *United States v. Fonseca,* 435 F.3d 369, 373-376 (D.C. Cir. 2006) (excluding extrinsic evidence of a prior arrest to avoid "a mini-trial" on a collateral issue); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) ("adverse consequences of jury confusion and trial delay" outweighed probative value of extrinsic evidence where proposed testimony would require the jury to conduct a "trial within a trial") (internal quotation marks omitted).

the offense charged"). To prove the charged Sherman Act offense, the government must establish, among other things, that the defendants entered into an agreement to unreasonably restrain trade. *See United States v. Giordano*, 261 F.3d 1134 (11th Cir. 2001). To demonstrate a violation of the FCPA, the government would need to establish that the defendants intended to bribe a foreign official to corruptly influence the exercise of his or her duties. *See* 15 U.S.C. § 78dd-2(a). The completely dissimilar nature of the two offenses would deprive even a provable FCPA violation of any probative value in the context of this case.

Moreover, permitting the government to offer evidence concerning payments to foreign officials would result in substantial confusion of the issues, delay and waste of time. Were the Court to allow presentation of such evidence, the defendants would mount a substantial defense which would include seeking documentary discovery and taking foreign depositions. Indeed, these matters are currently under investigation by the FCPA unit of the Department of Justice, and no charging decision has been made. That investigation should be permitted to run its course without forcing defendants to litigate highly prejudicial FCPA issues in a wholly unrelated antitrust case.

### B. Evidence Concerning Base Rates and Freight Forwarder Commissions

As with alleged payments to foreign officials, the government has not identified any non-propensity basis for the introduction of evidence related to either fixing base rates or the non-payment of commissions to freight forwarders. Moreover, evidence concerning these subjects should be excluded from the trial because of the absence of sufficient proof of the defendants' knowing participation in these matters, as well as the government's failure to provide adequate discovery and the likelihood that these issues would swallow the trial on the actual charge.

The clearest indication that there is an insufficient factual basis to permit the government to offer evidence on these subjects is that, notwithstanding a five year investigation, Messrs.

Ogiermann and Van de Weg were not charged with base rate or commission related offenses. Moreover, the complexities in defending against such claims would be substantial. The government has not produced the data needed to determine whether base rates were "fixed." Indeed, in response to a specific defense request (Exhibit C), it has refused even to identify what base rates the defendants purportedly attempted to fix. (Exhibit D.) Once provided access to relevant data, the defense would be obliged to conduct economic analyses and would seek to present expert testimony to refute the government's allegations. For example, with respect to any destination alleged to be part of the conspiracy to fix base rates, the defense would need compare the rates actually charged and determine whether there was any statistically significant change in pricing those routes. If ever there was the prospect for a trial within a trial that would distract the jury from the charged offense, this is surely it.

Similarly, on the issue of freight forwarder commissions, the defense would seek to demonstrate that historically Cargolux has never paid commissions to freight forwarders on surcharges and to explain the reason behind its decision. The defense would show that surcharges have been imposed to recoup significant increases in costs, but have not fully recouped those costs. Thus, to pay a commission on surcharge loss makes no economic sense. Moreover, the defense would present evidence that the decision not to pay commissions was in accord with relevant resolutions of the International Air Transport Association ("IATA"), a Geneva-based organization which has developed commercial standards in the air transportation industry for more than 60 years. This evidence would negate any inference that anyone acted with criminal intent in declining to pay commissions on surcharges.

## CONCLUSION

For all of these reasons, the defendants respectfully request that the Court exclude the government's proposed "other crimes" evidence.

Dated:  June 6, 2011					Respectfully submitted,

> MANDEL & MANDEL LLP
> 1200 Alfred I. duPont Building
> 169 East Flagler Street
> Miami, Florida 33131
> Telephone: 305.374.7771
> Facsimile:  305.374.7776
> dmandel@mandel-law.com
>
> By:	/s/ David S. Mandel
> 	DAVID S. MANDEL (Florida Bar No. 38040)
>
> STILLMAN FRIEDMAN & SHECHTMAN, P.C.
> Paul Shechtman (*pro hac vice*)
> John Harris (*pro hac vice*)
> 425 Park Avenue
> New York, New York 10022
> Telephone: 212.223.0200
> Facsimile:  212.223.1942
>
> *Attorneys for Defendant Uli Ogiermann*
>
> PROSKAUER ROSE LLP
> Robert J. Cleary (*pro hac vice*)
> William C. Komaroff (*pro hac vice*)
> Matthew Triggs (Florida Bar No. 0865745)
> 2255 Glades Road, Suite 340 West
> Boca Raton, Florida 33431
> Telephone: 561.241.7400
> Facsimile:  561.241.7145
> rjcleary@proskauer.com
> wkomaroff@proskauer.com
> mtriggs@proskauer.com
>
> By:	/s/ William C. Komaroff
> 	*Attorneys for Defendant Robert Van de Weg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFTY that a true and correct copy of the foregoing was filed by CM/ECF this 6th day of June 2011.

/s/ David S. Mandel

Case 9:10-cr-80157-KAM   Document 67   Entered on FLSD Docket 06/06/2011   Page 10 of 10