# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
4-26-2011
APR 2 6 2011 NH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: |
| v. | ) | |
| | ) | Violation: 15 U.S.C. § 1 |
| MARC BOUDIER and | ) | |
| | ) | Filed: |
| JEAN CHARLES FOUCAULT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## 11 CR 0308

**JUDGE GETTLEMAN**
**MAGISTRATE JUDGE DENLOW**

### INDICTMENT

The Grand Jury charges:

### THE DEFENDANTS

1.      The following individuals are hereby indicted and made Defendants on the charge stated below in this Indictment.

      (a)     MARC BOUDIER; and

      (b)     JEAN CHARLES FOUCAULT.

### CONSPIRACY TO RESTRAIN TRADE
### IN VIOLATION OF THE SHERMAN ANTITRUST ACT
(15 U.S.C. § 1)

2.      Beginning at least as early as August 2004, and continuing until February 2006, the exact dates being unknown to the Grand Jury, the Defendants MARC BOUDIER and JEAN CHARLES FOUCAULT and their co-conspirators entered into and engaged in a combination and conspiracy to suppress and restrain competition for international air transportation services for cargo ("air cargo services") by: (1) fixing and coordinating surcharges for international air shipments, including shipments to and from the United States and elsewhere; (2) agreeing not to pay their customers (*i.e.*, freight forwarders) commissions on surcharges, including surcharges on international air shipments to and from the United States and elsewhere; and (3) fixing and coordinating rates for

air cargo services, including international air shipments to certain United States locations and elsewhere. The combination and conspiracy engaged in by MARC BOUDIER and JEAN CHARLES FOUCAULT and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and their co-conspirators (*i.e.*, other air cargo carriers and their officials), the substantial terms of which were to suppress and restrain competition for air cargo services, by: (1) fixing and coordinating surcharges for international air shipments, including shipments to and from the United States and elsewhere; (2) agreeing not to pay commissions to their customers (*i.e.*, freight forwarders) on surcharges, including surcharges on international air shipments to and from the United States and elsewhere; and (3) fixing and coordinating rates for air cargo services, including international air shipments to certain United States locations and elsewhere.

<u>**MEANS AND METHODS OF THE CONSPIRACY**</u>

 4. For purposes of forming and carrying out the charged combination and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

  (a) participated, or directed, authorized, or consented to the participation of subordinate employees, in meetings, conversations, and communications to discuss surcharges for air cargo services, including surcharges for international air shipments to and from the United States and elsewhere;

  (b) participated, or directed, authorized, or consented to the participation of subordinate employees, in meetings, conversations, and communications to discuss rates for air cargo services, including rates for international air shipments to certain United States locations and elsewhere;

2

(c)    participated, or directed, authorized, or consented to the participation of subordinate employees, in meetings, conversations, and communications to discuss not paying their customers (*i.e.*, freight forwarders) commissions on surcharges for air cargo services, including surcharges for international air shipments to and from the United States and elsewhere;

(d)    agreed to fix and coordinate the timing and/or amount of surcharges to be imposed for air cargo services, including surcharges for international air shipments to and from the United States and elsewhere;

(e)    agreed to fix and coordinate the timing and/or amount of rates to be charged for air cargo services, including rates for international air shipments to certain United States locations and elsewhere;

(f)    agreed not to pay their customers (*i.e.*, freight forwarders) commissions on surcharges for air cargo services, including surcharges for international air shipments to and from the United States and elsewhere;

(g)    imposed surcharges in accordance with the agreement and understanding reached by the Defendants and their co-conspirators, including surcharges for international air shipments to and from the United States and elsewhere;

(h)    issued announcements of increases on surcharges in accordance with the agreement and understanding reached by the Defendants and their co-conspirators, including surcharges for international air shipments to and from the United States and elsewhere;

(i)    issued announcements of rate increases in accordance with the agreement and understanding reached by the Defendants and their co-conspirators, including rates for international air shipments to certain United States locations and elsewhere; and

3

(j)    refused to pay their customers (*i.e.*, freight forwarders) commissions on surcharges in accordance with the agreement and understanding reached by the Defendants and their co-conspirators, including surcharges for international air shipments to and from the United States and elsewhere.

## BACKGROUND:

### THE DEFENDANTS AND THEIR CO-CONSPIRATORS

5.    At all times relevant to this Indictment, Société Air France ("Air France") was a corporation organized and existing under the laws of France, headquartered in Roissy, France, with its principal place of business in Paris, France. During the period covered by this indictment, Air France was engaged in the business of providing air cargo services in the United States and elsewhere.

6.    Until May 2004, Air France and Koninklijke Luchtvaart Maatschappij N.V. ("KLM Royal Dutch Airlines") operated as two separate, independent companies: Air France was a corporation organized under the laws of France; and KLM Royal Dutch Airlines was a corporation organized and existing under the laws of The Netherlands. Beginning in May 2004 and continuing at least through February 2006, Air France and KLM Royal Dutch Airlines were under common ownership by a single holding company. This new entity – Air France/KLM – is a corporation organized and existing under the laws of France with its principal place of business in Paris. Air France and KLM integrated their sales and marketing operations, except in the United States, in October 2005. From May 2004 through October 2005, Air France and KLM maintained separate sales and marketing operations. The United States headquarters for Air France, and later Air France/KLM, is located in New York City, with operations in various cities, including Chicago, Illinois, and Miami, Florida.

7.    At all times relevant to this Indictment, MARC BOUDIER was the executive vice president of Air France Cargo. (Air France Cargo was an unincorporated division of Air France.)

4

MARC BOUDIER's office was in Paris. At all times relevant to this Indictment, MARC BOUDIER, on behalf of Air France (and later Air France/KLM), was engaged in the business of providing air cargo services in the United States and elsewhere.

8.    During the period from August 2004 until approximately October 2005, JEAN CHARLES FOUCAULT was the vice president of sales and marketing of Air France Cargo. From approximately October 2005 through February 2006, JEAN CHARLES FOUCAULT was the senior vice president of sales and distribution of Air France/KLM. At all times relevant to this Indictment, JEAN CHARLES FOUCAULT's office was in Paris. At all times relevant to this Indictment, JEAN CHARLES FOUCAULT, on behalf of Air France (and later Air France/KLM), was engaged in the business of providing air cargo services in the United States and elsewhere.

9.    Various corporations and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

10.    Whenever in this Indictment reference is made to any act, deed or transaction of any corporation or company, the allegation means that the corporation or company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

11.    During the period covered by this Indictment, Air France (and later Air France/KLM) and the Defendants' co-conspirators provided air cargo services to and from the United States and elsewhere. Air France (and later Air France /KLM) transported a variety of cargo, such as heavy equipment, perishable commodities, and consumer goods, on scheduled flights internationally, including to and from the United States. For air cargo services, the Defendants, on behalf of Air France (and later Air France /KLM), and their co-conspirators charged customers a

5

rate and surcharges. Rates varied based on the type and weight of the shipment, the origin and/or destination of the shipment, and the nature of the goods or products shipped.

### TRADE AND COMMERCE

12. During the period covered by this Indictment, proposals, contracts, invoices for payment, payments, and other documents essential to the provision of air cargo services were transmitted in interstate and foreign trade and commerce between and among the offices of Air France (and later Air France/KLM) and its customers located in various States and foreign countries.

13. During the period covered by this Indictment, Defendants and their co-conspirators transported substantial quantities of cargo, in a continuous and uninterrupted flow of interstate and foreign commerce, between various foreign countries and the United States, including through various U.S. airports to final destinations in various States.

14. During the period covered by this Indictment, the business activities of Defendants and their co-conspirators in connection with the air cargo services that are the subject of this Indictment involved import commerce and were otherwise within the flow of, and substantially affected, interstate and foreign trade and commerce.

### JURISDICTION AND VENUE

15. The combination and conspiracy charged in this Indictment was carried out, in part, within the Northern District of Illinois within the five years preceding the return of this Indictment, excluding the period during which the running of the statute of limitations was suspended pursuant to tolling agreements with the defendants MARC BOUDIER and JEAN CHARLES FOUCAULT, and

further excluding the period during which the running of the statute of limitations was
suspended pursuant to a foreign legal assistance request.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated:

A TRUE BILL:


_____

FOREPERSON

_____

LISA M. PHELAN
Chief, National Criminal Enforcement Section
Antitrust Division
U.S. Department of Justice


_____

SCOTT D. HAMMOND
Acting Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____

SCOTT M. WATSON
Chief, Cleveland Field Office
Antitrust Division
U.S. Department of Justice


_____

JOHN F. TERZAKEN
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____

RICHARD T. HAMILTON, JR.


JASON M. KATZ

Trial Attorneys
Cleveland Field Office
Antitrust Division
U.S. Department of Justice

_____

PATRICK J. FITZGERALD
U.S. Attorney
Northern District of Illinois

Carl B. Stokes U.S. Court House
801 W. Superior Ave.
Cleveland, OH 44113
Tel: (216) 687-8433
Fax: (216) 687-8423
E-mail: richard.hamilton@usdoj.gov