UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80157-CR/MARRA/HOPKINS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ULRICH OGIERMANN and
ROBERT VAN DE WEG,

        Defendants.
_____/

**UNITED STATES' RESPONSE
TO DEFENDANTS' MOTION TO PRECLUDE OTHER ACT EVIDENCE**

Comes now the United States, by and through its under-signed attorneys, and files this Response to Defendants' Motion to Preclude Other Act Evidence. The United States intends to introduce the following evidence at trial showing the common plan and scheme to unjustly enrich the defendants, and Cargolux Airlines International S.A. ("Cargolux"): a) fixing the prices on components of prices for air cargo shipments affecting areas outside of the United States market; b) conspiring to increase base rates on air cargo shipments in 2000, 2001, and 2005; c) making certain payments to foreign officials in violation of the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd *et seq.* ("FCPA"); and d) agreeing with their co-conspirators not to pay commissions to their customers on the agreed-upon surcharges.[1]

---

[1] In its letter of February 25, 2011, the United States indicates that the agreement not to pay commissions on the fuel surcharge amounts was neither inextricable nor 404(b) material. Rather, it was included in the Indictment itself in Paragraph 9(e) under "Manner and Means of the Conspiracy." The evidence at trial will show that the defendants and their co-conspirators frequently discussed continuing not to pay commissions on the surcharges as part of their effort to avoid competing with each other. Paying commissions on the surcharges would have made them similar to the base rates and subject to price negotiation with the customers. Were this allegation not in the Indictment, the analysis for both "inextricably intertwined" and "404(b)" would be applicable.

**I.      Factual Background**

The United States agrees with the representations by the defendants in their brief regarding the factual background in this case.

**II.     Evidence of Participating in a Global Price-Fixing Conspiracy
by the Defendants is Inextricably Intertwined With the Charged Conduct**

The case at bar is focused on the participation in a global price-fixing conspiracy by Defendants Ogiermann and Van de Weg. The defendants are the two highest ranking agents of Cargolux who participated in the price-fixing conspiracy between 2001 and 2006. Through their participation in group meetings, telephone calls, emails, and private meetings with their competitors, both defendants achieved their aim of increasing the profitability of Cargolux through illegal and unfair means. The charged conduct relates to the air cargo that the conspirators shipped to and from the United States. The actual scope of the defendants' conduct, however, was global in scale and affected air freight shipped throughout the world.

In *United States v. Smith*, 122 F.3d 1355 (11th Cir. 1997), the Eleventh Circuit held that evidence of a separate crime is admissible when inextricably intertwined with the charged offense. In *Smith,* the defendant was charged with robbery of a Merchant Bank. *Id.* at 1356. The Eleventh Circuit sustained the admission of evidence that the defendant's confederate used the same weapon, baseball cap, and bait bills from the Merchant Bank robbery during a SouthTrust Bank robbery occurring later that same day on the basis that such evidence was "inextricably intertwined" with the offense charged against Smith. *Id.* at 1360. The Eleventh Circuit explained:

> Evidence of criminal activity other than the offense charged, however, is ***not*** extrinsic evidence if it is inextricably intertwined with the evidence of the charged offense. Furthermore, Rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Id.* at 1359 (emphasis added). *See also United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir. 1982) (Evidence of earlier narcotics transactions is not extrinsic to charged narcotic offense, but

2

"formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."); *United States v. Cancelliere,* 69 F.3d 1116 (11th Cir. 1995) (Evidence that defendant made the similar uncharged misrepresentations to other banks, as alleged in the manner and means section of the indictment, was inextricably intertwined because it concerned context, motive, and set-up of the charged offense.); *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir. 1985) (Evidence of defendant's negotiation regarding cocaine was admissible when the defendant was charged with importing large quantities of marijuana because it was "necessary to complete the story of the crime for the jury.").

     A.     **Evidence of Global Price Fixing is Inextricably Intertwined**

In the current case, agents of Cargolux, Martinair, Lufthansa, KLM, and Air France will testify about the conspiracy to fix air cargo prices throughout the world. These agreements are subsumed in email strings that relate both to the U.S. market and the other markets in the world. For instance, the security surcharge imposed by Defendant Ogiermann in October of 2001 covered every kilogram of Cargolux freight throughout the world during the entire conspiracy period. Similarly, the fuel surcharge discussions were handled by Messrs. Ogiermann and Van de Weg in discussions with their competitors. These agreements to change the fuel surcharge affected not only the market in the United States but the markets in Europe, Asia, South America, and the Middle East.

It will be necessary to present evidence of the defendants' actions in all of these markets to complete the story of the crime for the jury. It is also "linked in time" with the conspiratorial discussions relating to the U.S. market.[2] Often, agreements to increase the surcharges were made on the telephone and then the agents of the five co-conspirator companies emailed that information to their division heads throughout the world so that the increases could be

---

[2]In *United States v. McNair*, 605 F.3d 1152 (11th Cir. 2010), the Eleventh Circuit noted, "Moreover, evidence of similar conduct that occurs during the same time period has 'heightened' probative value." *Id.* at 1204.

3

implemented in a coordinated fashion. In addition, from time to time, difficulties in implementing the agreed-upon increases would occur in the outlying markets. Evidence relating to these difficulties forms an "integral and natural part of the account of the crime." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

      **B.**      **Evidence of Agreements on Base Rates is Inextricably Intertwined**

The United States will present evidence that in 2000 and 2001, agents from Cargolux attended price fixing meetings, and telephone calls, with their competitors in an effort to increase and stabilize base rates for air cargo shipments in the worldwide market. The Cargolux employees who attended these meetings did so under the supervision of defendant Ogiermann. In the summer and fall of 2005, similar meetings resumed. Both defendants were aware of, and involved in, the price fixing discussions in 2005 regarding base rates and, concurrently, increases to the fuel surcharge. These efforts were directed at increasing prices for numerous destinations throughout the world for the cargo carriers involved. The evidence will show that the defendants and their co-conspirators, through a series of calls and meetings, agreed to increase both the fuel surcharge and base rates to certain destinations. The discussions of base rate increases were held in conjunction with the fuel surcharge discussions.

      **C.**      **Evidence of Payments to Foreign Officials is also Inextricably Intertwined**

The United States will offer evidence that, while the defendants were actively involved in the charged price-fixing conspiracy, they also participated in a scheme to make improper payments to foreign officials throughout the globe.[3]

**III.**      **Other Crimes, Wrongs and Acts Evidence is Admissible Under 404(b)**

Even if it were not so intertwined, evidence of the "other wrongdoing" in this matter by the defendants is admissible under Rule 404(b). In the Eleventh Circuit, there is a three-prong

---

[3]The United States intends to file a supplemental brief, under seal, regarding this issue once it has more fully developed the facts.

test for evaluating the admissibility of evidence of uncharged conduct under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)(citations omitted).

The Supreme Court addressed the application of Rule 404(b) where extrinsic evidence of other acts is offered to show the defendant's intent in *Huddleston v. United States*, 485 U.S. 681 (1988). The *Huddleston* defendant was charged with selling stolen goods in interstate commerce, and the government offered evidence of separate transactions by the defendant involving stolen goods three months earlier than the charged offense and the month following the charged offense. As in the case at bar, the *Huddleston* defense rested on the alleged lack of criminal intent.

> The Supreme Court held that:
>
> Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, *especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.*

*Id.* 485 U.S. at 685 (emphasis added). Thus, the extrinsic evidence was properly admitted because it was probative of intent, and its probative value outweighed any "unfair prejudice." *See* Fed. R. Evid. 404(b), 403. *See also United States v. Beechum,* 582 F.2d 898, 907 (5th Cir. 1978) (Extrinsic evidence that defendant possessed two stolen credit cards when he was arrested for stealing a coin from the mail is admissible to show intent because "the plausibility of his story about the coin is appreciably diminished" in light of evidence of the other wrongful acts.); *United States v. Cohen,* 888 F.2d 770, 776 (11th Cir. 1989) ("Fed. R. Evid. 404(b) . . . is one of inclusion which allows such evidence unless it tends to prove *only* criminal propensity.") (emphasis added).

Rather than creating a primary inference of the defendants' character or propensity to

5

commit criminal acts, the evidence of other acts instead permit the inference that the defendants' conduct was deliberate and intentional, and not a mistake or accident. *See United States v. Lamons*, 532 F.3d 1251, 1266 (11th Cir. 2008) (citing *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1989)).  The Eleventh Circuit in *Lamons* sustained the admission of evidence of the defendant's prior conviction related to an incident involving threatening phone calls made to an airline when he was charged with setting a fire in the lavatory of an aircraft. *Id.*  The Court noted that "Despite the difference in certain instrumentalities . . . the incidents resemble each other in their distinctive means and ultimate purpose." *Id.* at 1267.  Additionally, "perfect equivalence between the physical elements of the extrinsic and charged offenses is not required" and instead courts "assess their overall similarity." *Id.* at n.27 (citing *Beechum*, 582 F.2d at 912 n.15).

Similarly, in *United States v. Giordano*, 261 F.3d 1134 (11th Cir. 2001), the Eleventh Circuit sustained admission of evidence of other acts despite the defendants' complaint that the evidence became the focus of the trial. *Id.* at 1140.  Evidence of an earlier price-fixing conspiracy was allowed in because "the evidence that prices in fact decreased in the manner prescribed by the agreement, strongly suggests that [the defendants] had the intent to fix prices." *Id.* at 1141.  The Court held that this evidence, in addition to showing that the defendants had engaged in price-fixing conduct on behalf of their company, had strong probative value as to intent. *Id.*

In *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010), the Eleventh Circuit discussed the application of Rule 404(b) in a similar context.  In *McNair*, the Court faced a bribery scheme where contractors had bribed numerous members of the county government. Due to a severance, each county official was tried separately, along with the bribe payors to that official.  There, the Court held that evidence of bribes that the contractors paid to other county officials, which were the subject of separate trials, was still admissible to show intent, common plan, and motive.  The Eleventh Circuit noted, "...such extrinsic evidence as may be probative of

6

a defendant's state of mind is admissible unless the defendant affirmatively takes the issue of intent out of the case." *Id.* (citing *United States v. Mathews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005)).

In the case at bar, it is most probable that the defendants will agree that they had the conversations with their co-conspirators but contend that they never agreed to fix prices with them. This defense is typified by the "conscious parallelism" argument that the defendants raise in their Motion to Dismiss Indictment (Doc. 68). Raising this defense makes it clear that the intent and knowledge issues will be the focus of the trial in the present case. Just as the frequent bestowal of gifts and loans on other county officials was relevant to show motive, intent and plan in *McNair*, it is relevant here for the same purposes.

The balancing test in Rule 403 is an "extraordinary remedy . . . which should be used sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (quoting *United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001)). In *Wright*, the Eleventh Circuit sustained the admission of evidence concerning the defendant's resistance to arrest and resulting charges of battery on a police officer when the charged offense was possession of a firearm by a convicted felon. *Id.* at 1271-72. The Court reasoned that "evidence of those events contributed to the understanding of the situation as a whole." *Id.* at 1276. In that case, the "probative value of the evidence is demonstrated by the need to put a cohesive sequence of the crime before the jury." *Id.* at 1276-77.

In the present case, evidence of price fixing in the global market for air freight, conspiring to increase base rates, and illicit foreign payments, like the separate transactions in *Huddleston, Beechum* and *Lamons*, will not be offered to show mere criminal propensity. Instead, such evidence demonstrates the defendants' intent to join the conspiracy, state of mind, a common plan or scheme of enriching Cargolux by dishonest methods, motive to commit the acts charged in the Indictment, and also absence of mistake.

## **CONCLUSION**

For these reasons, the United States respectfully requests that the Court DENY Defendants' Motion to Preclude Other Act Evidence and admit the proposed other act evidence, as stated above. The United States also reserves the right to supplement this notice, as necessary.

This 21st day of June, 2011.

Respectfully submitted,

/S/William D. Dillon
William D. Dillon (Special Bar No. A5501551)
Mark C. Grundvig (Special Bar No. A5501546)
U.S. Department of Justice, Antitrust Division
450 5th Street, N.W., Suite 11300
Washington, DC 20530
Tel.:  404/331-7100
Fax: 404/331-7110
william.dillon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 21, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record. Counsel of record has been provided a copy of this document, either by electronic mail or by facsimile.

/s/ William D. Dillon