UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80157-Cr-MARRA/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ULI OGIERMANN and
ROBERT VAN DE WEG,

    Defendants.
_____/

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO MOTION IN LIMINE TO PRECLUDE EVIDENCE
AND ARGUMENT AIMED AT JURY NULLIFICATION**

    This memorandum of law is respectfully submitted in response to that portion of the government's motion in limine which seeks to preclude the defendants from "offering evidence concerning, or referring in opening statements or arguments to . . . [t]he economic justification, lack of harm, or alleged reasonableness of prices that have been reached as a result of an antitrust conspiracy." Gov't Motion at 1; see Dkt. ## 65, 74. The defendants do not intend to offer evidence, or make arguments, that would contradict the established rule that agreeing to fix prices is per se illegal. See, e.g., Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643 (1980). But, as discussed below, the government's preclusion motion sweeps too broadly, for it would improperly exclude evidence (and arguments) offered to show that there was no agreement at all.

    The leading decision in this area is Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir. 1960). There, the government sought to prove that four companies had acted in concert to fix the price of bakery goods in Memphis. To that end, it offered proof that the

defendants had met and discussed prices and that, after each meeting, one of the companies raised its prices and the others followed suit. For their part, the defendants admitted to the meetings but "sought to show that they were following an economically dictated practice of conscious parallelism of prices, rather than engaging in any illegal conspiracy to fix prices." Id. at 141. Specifically, the defendants sought to introduce proof of "similarity of costs, operations, marketing procedures, and other economic factors affecting price changes, alleged to be common to all, and had expert witnesses in support of their theory." Id. It was this evidence that the trial judge excluded and that was a focus of the defendants' appeal.

On appeal, the Sixth Circuit held that the trial judge's exclusionary ruling was wrong:

> The proffered explanatory evidence must be differentiated from the defense of justification. A price-fixing agreement is conclusively presumed to be unreasonable. Therefore any evidence of justification or reasonableness after such an agreement has been established is properly excluded in a Sherman Act case. A defendant cannot say 'I have entered into a price-fixing agreement, but the prices fixed are reasonable ones dictated by economic pressures.' The fact that the prices were reasonable is no defense. Once the defendant admits the agreement he may say no more for it is illegal per se. Here, the defendants have admitted no agreements and in order for the jury to find that any were reached they must find that fact from all the evidence, and in the face of the defendants' denials thereof. The defendants should, therefore, be entitled to set before the jury their explanation of what brought about the similar prices. The dividing line between justification and explanation may well be a fine one, but for that reason those walking on it must tread carefully.

Id. at 143-44 (citations omitted); see also id. at 143 ("[w]hether or not a conspiracy to fix prices has been established was for the jury to say and the court could not determine this issue as a matter of law"). Notably, the Eleventh Circuit has cited the decision in Continental Baking Co. with approval. See United States v. Goodman, 850 F.2d 1473, 1479 (11th Cir. 1988)("[r]easonableness of the prices is no defense if the agreement is found to exist, but defendants should be entitled to place their evidence before the jury in explaining the pricing

2

similarity"); see also Antitrust Law Developments (6th ed. at 50 n.257)("[s]everal lower courts . . . have held that defendants may introduce evidence to explain the economic factors influencing their prices in an attempt to prove that a conspiracy did not exist").

Here, the Cargolux defendants intend to walk on the explanation side of the line. Illustrative of the types of evidence that the defendants intend to offer are these: First, the defendants intend to show that fuel costs were rising rapidly between 2002 and 2006; that Lufthansa, an industry giant, developed a fuel price index to measure the increase in fuel costs, as well as a fuel surcharge mechanism to mitigate the effect of those costs; and that Cargolux followed Lufthansa's lead.[1] For Cargolux, that decision had a simple and compelling economic logic: when Lufthansa increased its fuel surcharge, Cargolux could gain little by not following. Its flights were often at capacity, so not following Lufthansa's lead would result in little new business but cost it significant revenue. Conversely, when Lufthansa lowered its fuel surcharge (as it did six times during the "conspiracy period"), Cargolux would have been foolish not to go along. Had it not, it would have lost business to Lufthansa and other carriers, which had the capacity to expand. Surely, under Continental Baking Co., such explanatory proof is admissible to show that Cargolux was acting in its independent self interest and not agreeing with others.

Second, the defendants intend to show that even after the "conspiracy period" -- i.e., after the offices of several carriers were "raided" and the carriers stopped communicating with each other about the fuel surcharge -- the practice of following Lufthansa's lead continued. This evidence, we submit, further demonstrates that economic realities, and not conspiratorial agreement, were the driving force in pricing decisions -- i.e., that there was an "economically

---

[1] The Lufthansa index was based on a weighted average of the spot price of various jet fuels. It used a price of $.53 per gallon as a benchmark of 100 points. If the index rose above 115 points for two consecutive weeks, a 5¢ per kilo surcharge was added. If it rose above 135 points, the surcharge was increased to 10¢ per kilo, and so forth. The surcharge was an "add on" to the stated rate for transporting goods between two locations.

3

dictated practice of conscious parallelism of prices, rather than . . . any illegal conspiracy to fix [them]." Continental Baking Co., 281 F.2d at 141.

And third, defendants intend to show that numerous carriers who are not charged in the conspiracy also followed Lufthansa's lead. Compare Gov't Br. at 11 n.2 & 12 (defendant should not be able to offer evidence of non-conspiracy competitors' prices). The point here can be seen with a hypothetical based on the facts of Continental Baking Co. Assume that the evidence showed that three other Memphis baking companies did not join the meetings but that their prices were the same as those of the four "conspirators." Such evidence, we submit, would go far to show that what occurred in the meeting was an exchange of information but not an agreement, and that conscious parallelism was at work. By the same logic, the defendants here should be able to show that numerous other carriers, whose senior executives spoke with no one, found that following Lufthansa's lead was the most viable course.

In sum, although the defendants will not "attempt to show an economic justification for the illegal agreement or the alleged reasonableness of prices charged by the conspirators," Gov't Br. at 8, they do intend to offer evidence to explain that there was no conspiratorial agreement (only conscious parallelism), and such evidence should not be precluded. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-54 (2007)("conscious parallelism, a common reaction of firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions is not in itself unlawful").

Dated: August 15, 2011

Respectfully submitted,

MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida  33131
Telephone:     305-374-7711
Facsimile:      305-374-7776
dmandel@mandel-law.com

By:     /s/ David S. Mandel
DAVID S. MANDEL (Florida Bar No. 38040)

STILLMAN FRIEDMAN & SHECHTMAN, P.C.
Paul Shechtman (pro hac vice)
John B. Harris (pro hac vice)
425 Park Avenue
New York, New York  10022
Telephone:     212-223-0200
Facsimile:      212-223-1942
pshechtman@stillmanfriedman.com
jharris@stillmanfriedman.com

By:     /s/ Paul Shechtman

*Attorneys for Defendant Uli Ogiermann*

PROSKAUER ROSE LLP
Robert J. Cleary (pro hac vice)
William C. Komaroff (pro hac vice)
Matthew Triggs (Florida Bar No. 0865745)
2255 Glades Road, Suite 340 West
Boca Raton, Florida  33431
Telephone:     561-241-7400
Facsimile:      561-241-7145
rjcleary@proskauer.com
wkomaroff@proskauer.com
mtriggs@proskauer.com

*Attorneys for Defendant Robert Van de Weg*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed by CM/ECF this 15th day of August 2011.

/s/ David S. Mandel