UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80157-CR-MARRA/HOPKINS
15 U.S.C. § 1

UNITED STATES OF AMERICA

        Plaintiff,

vs.

ULRICH OGIERMANN

        Defendant.
_____/

UNITED STATES' MEMORANDUM IN AID OF SENTENCING AND
MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. 5K1.1

The United States hereby moves for a downward departure from the United States Sentencing Guidelines ("U.S.S.G.") Offense Level and incarceration and fine range calculated in the above-captioned matter due to Defendant Ulrich Ogiermann's substantial assistance in the investigation and prosecution of other individuals involved in Sherman Act violations in the air cargo industry.

I.     FACTUAL BACKGROUND

Defendant Ogiermann has agreed to the following facts:

From at least as early as October 2001 until at least February 14, 2006 (the "relevant period"), defendant was employed by Cargolux Airlines International S.A. ("Cargolux"), a corporation organized and existing under the laws of the Grand Duchy of Luxembourg, with its principal place of business in the city of Luxembourg. During the period from October 2001 through January 2003, defendant was Senior Vice President Sales and Marketing with Cargolux, and during the period from January 2003 until February 2006, defendant was the President and

Chief Executive Officer of Cargolux.  During the relevant period of the cargo conspiracy, defendant's employer Cargolux provided international air transportation services for cargo ("air cargo services") in the United States and elsewhere.  For its air cargo services, Cargolux charged its customers a rate that consisted of both a base rate and various surcharges, such as a fuel surcharge and a security surcharge.  The amount of the base rate charged by Cargolux could vary based on the type and weight of the shipment, the origin and/or destination of the shipment, and the nature of the goods or products being shipped.  During the relevant period, Cargolux's sales of air cargo services that originated in the United States totaled approximately $356 million.

During the relevant period, the defendant, acting on behalf of Cargolux, participated in a conspiracy among major international air cargo carriers, the primary purpose of which was to suppress and eliminate competition by fixing components of the air cargo rates charged to customers for air cargo services, including shipments to and from the United States.  The defendant's conduct had the effect of misleading and deceiving the public as to the actual competitive prices for air cargo services.  In furtherance of the conspiracy, the defendant directly engaged in, or directed subordinates to engage in, discussions and meetings among representatives of other major international air cargo carriers.  During these discussions and meetings, agreements were reached to fix components of the cargo rates to be charged to purchasers of air cargo services in the United States and elsewhere.

During the relevant period, air cargo services sold by one or more of the conspirator carriers, and aircraft necessary to transport the air cargo shipments, as well as payments for the air cargo shipments, traveled in interstate and foreign trade and commerce.  The business activities of Cargolux and its co-conspirators in connection with the sale and provision of air

cargo services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

  II.  SENTENCING CONSIDERATIONS

The United States respectfully submits that the following factors enumerated in U.S.S.G. §5K1.1 warrant downward departure.

  A.  Nature and Extent of Assistance

U.S.S.G. §5K1.1(a)(3) lists as a relevant factor the nature and extent of the Defendant's assistance. Since he began cooperating and before he pled guilty, Defendant Ogiermann met with attorneys for the United States to provide information regarding his own culpability and that of his co-conspirators. Defendant Ogiermann has provided evidence against his co-conspirators. Defendant is committed to continuing his cooperation by, among other things, making himself available to testify at any trial that may occur as a result of the air cargo investigation. Defendant has provided substantial cooperation to date and is obligated by the terms of his plea agreement to continue to provide that cooperation in the future.

  B.  Timeliness

U.S.S.G. §5K1.1(a)(5) lists as a relevant factor the timeliness of the defendant's assistance. Defendant Ogiermann agreed to plead guilty prior to trial subsequent to his indictment and in doing so is positioned to aid in the prosecution of other foreign nationals who have been indicted. The cooperation he has provided to date is sufficiently timely in that he can provide information that will aid the United States in preparation for trial against other individuals.

### C. Truthfulness

U.S.S.G. §5K1.1(a)(2) lists as a relevant factor the truthfulness, completeness, and reliability of any information or testimony provided by the defendant.  Defendant Ogiermann has already provided information regarding specific meetings and discussions with competitors about collusive activities regarding cargo rates.  The information he provided about those contacts has been corroborated by other witnesses and contemporaneous documents from Cargolux files.  He has agreed to continue to make himself available for additional interviews and understands his obligation to be fully truthful.

### D. Government's Evaluation of the Assistance

U.S.S.G. §5K1.1(a)(1) lists as a relevant factor the United States' evaluation of the assistance rendered by the defendant.  In this case, the United States believes that Defendant Ogiermann has provided substantial assistance that will be valuable in its ongoing prosecutorial efforts against other individuals involved in the air cargo conspiracy.  He has provided an accounting of his own criminal conduct and is committed to working further with the United States.  His cooperation has provided the United States with timely, credible information against other individual co-conspirators which may aid in their prosecution.  International conspiracies which are formed and carried out by conspirators located in various countries are difficult to prove without the testimony of co-conspirators.  Defendant Ogiermann's assistance will substantially assist the United States in other cases.

### E. Other Factors Under 18 U.S.C. §3553(a)

When fashioning an appropriate sentence, the Court should also consider the factors set forth in 18 U.S.C. §3553(a).  As described herein, Defendant Ogiermann participated in a serious crime over a long period of time.  He does not, however, have any criminal history and does not

appear to be at high risk for recidivism. He has accepted responsibility for his actions and appears remorseful. The antitrust sentencing guidelines in U.S.S.G. Part R tie the offense level (and sentence) to the volume of commerce because that results in a sentence that both reflects the seriousness of the offense and should serve to deter criminal conduct by similarly situated business executives.

By the same token, a significant departure is appropriate in this case in order to encourage individuals to cooperate prior to trial when the information they can provide can be useful. Indeed, the United States believes that the departure recommended in this case played a significant role in Defendant Ogiermann's decision to plead guilty and cooperate. As noted previously, that cooperation came at a time when it will substantially assist in the prosecution against others.

Finally, the proposed sentence adequately protects against unwarranted sentence disparities among antitrust defendants with similar records. All antitrust sentences, like those imposed in fraud cases, start from the proposition that the sentence should reflect the harm caused. As the Guidelines note: "Tying the offense level to the scale or scope of the offense is important in order to ensure that the sanction is in fact punitive and that there is an incentive to desist from a violation once it has begun." U.S.S.G. §2R1.1, Commentary (Background). Although the offense levels are not directly tied to damages, the volume of commerce serves as a proxy for the harm caused and functions as well to foster consistency among the sentences imposed for antitrust offenders. Thus, the only disparity stems from the amount of the departure; and Defendant Ogiermann is receiving an appropriate departure when compared with other foreign nationals who pled guilty at a point when they could substantially assist with ongoing cases.

III. CONCLUSION

Accordingly, in the opinion of the United States, the cooperation already tendered and promised in the future by Defendant Ogiermann merits a downward departure as contemplated by Section 5K1.1. The United States recommends and respectfully requests that its request for downward departure be granted and that Defendant Ogiermann be sentenced to a period of incarceration of thirteen (13) months, with no period of supervised release, and that he be sentenced to pay a criminal fine of $20,000 within 15 days after imposition of sentence pursuant to the terms of the parties' Plea Agreement.

DATED: March 5, 2012

        Respectfully submitted,

        BY: /s/   Mark C. Grundvig
           MARK C. GRUNDVIG (Special Bar No. A5501546)
           WILLIAM D. DILLON (Special Bar No. A5501551)
           U.S. Department of Justice, Antitrust Division
           450 5th Street, N.W., Suite 11300
           Washington, DC 20530
           Tel.: (202) 305-1878
           Facsimile: (202) 514-6525
           mark.grundvig@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that I caused a true and correct copy of the United States' Memorandum in Aid of Sentencing and Motion for Downward Departure Pursuant to U.S.S.G. 5k1.1 to be served upon the undersigned attorney via the Electronic Case Filing system on March 5, 2012:

      Paul Shechtman
      Zuckerman Spaeder LLP
      1540 Broadway
      Suite 1604
      New York, New York 10036
      (646) 746-8657

DATED:    March 5, 2012

      /s/   Mark C. Grundvig
      Mark C. Grundvig
      U.S. Department of Justice
      Antitrust Division
      450 5th St., NW
      Suite 11300
      Washington, D.C. 20530